CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
12/28/2022
LAURA A. AUSTIN, CLERK
BY: s/ C. Amos
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JOSEPH CLARK,<br><br>     *Plaintiff*,<br><br>  v.<br><br>ANDREW DAULTON,<br><br>     *Defendant.* | CASE NO. 6:22-cv-00062<br><br>MEMORANDUM OPINION AND ORDER<br><br>JUDGE NORMAN K. MOON |

  Defendant Andrew Daulton, a Virginia state police officer, moves to dismiss Plaintiff Joseph Clark's suit alleging that Defendant violated Plaintiff's Fourth and Fourteenth Amendment rights by (1) unreasonably seizing him, and (2) continuing to detain him for fourteen minutes even after Defendant realized his traffic stop was a mistake, Dkt. 11. Because Plaintiff has failed to state a claim under 42 U.S.C. § 1983 for Counts (1) and (2), and even if he had stated such a claim for Count (2), it would be barred by qualified immunity, Plaintiff's suit must be dismissed.

## Background

  The following alleged facts are assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (reiterating the appropriate standard of review).

  Plaintiff purchased a 2003 Chevrolet Malibu from a dealer in Bad Axe, Michigan on June 17, 2022. Dkt. 6 ("Amend. Compl.") ¶ 1. The dealer issued a standard Michigan temporary tag, and a dealership employee affixed it "completely visible in the upper back window." *Id.* ¶¶ 2–3. A few weeks later, on July 1, 2022, Plaintiff was operating his car on Richmond Highway in

Appomattox, Virginia. *Id.* ¶ 5. "The tag was properly secured in the window." *Id.* At 6:05 pm, Defendant drove up behind Plaintiff and activated his overhead lights, requiring Plaintiff to pull over. *Id.* ¶ 6. Plaintiff pulled into a parking space in the Tru Value parking lot, and Defendant pulled in behind him. *Id.* ¶¶ 7–8. Defendant's overhead lights remained on, and Defendant's car blocked Plaintiff's car in the parking spot. *Id.* ¶ 8.

When approaching Plaintiff's car from behind, Defendant "could clearly see the temporary tag in [Plaintiff's] back window." *Id.* ¶ 9. Defendant told Plaintiff that he "pulled [him] over because of the **tag in the window**." *Id.* ¶ 10 (emphasis in original). After Plaintiff asked what was wrong with it, Defendant told him "**there is nothing wrong with the tag**," but "demanded [Plaintiff's] driver's license." *Id.* ¶¶ 11–13 (emphases in original).

Upon this demand, Plaintiff protested, stating Defendant had no belief Plaintiff had done anything wrong, and Plaintiff could not be detained and required to show his driver license. *Id.* ¶ 14. Defendant replied that the "practice is allowed <u>despite there being no reason to believe plaintiff had done anything wrong.</u>" *Id.* ¶ 15 (emphasis in original). Plaintiff claims he was not free to leave, and he continued protesting while Defendant continued to state the practice was allowed under law. *Id.* ¶ 16. Plaintiff gave Defendant his driver license "[b]ecause [he] was not free to leave and because he knew he was about to be arrested if he didn't comply." *Id.*

Plaintiff asserts that Defendant "tried to escalate the situation <u>by the manner</u> in which [Defendant] aggressively asked [Plaintiff] ***YOU GOT A PROBLEM***?" *Id.* ¶ 19 (emphasis in original). Plaintiff again "asserted that he can not be held / detained where there is **no belief** [Plaintiff] has done anything wrong." *Id.* ¶ 20. And Defendant "then stated there is 'caselaw' allowing the defendant to be detained when there is no belief that he did anything wrong based

upon 'mistake'." *Id.* ¶ 21. Defendant continued detaining Plaintiff "***even after*** [Defendant] realized his 'mistake' about the tag." *Id.* ¶ 22.

At 6:20 pm, "[D]efendant cleared the traffic stop." *Id.* ¶ 25. Plaintiff called Defendant's supervisor, Trooper Glasscock, complaining to him of the incident, and Trooper Glasscock "called and talked to the defendant," who "**acknowledged** the traffic stop occurred," in the manner Plaintiff stated. *Id.* ¶¶ 27–28.

Plaintiff asserts that Defendant's "actions are particularly malicious because he believes that he can pull completely law abiding citizens over, claim 'mistake' and *then* **continue** to violate a citizen's constitutional rights." *Id.* ¶ 24.

### Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The purpose of a Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King*, 825 F.3d at 214 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). "Thus, when considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020). Nevertheless, only facts can render a claim for relief plausible. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. The plaintiff must plead enough factual content to nudge a claim across the border from mere possibility to plausibility. *Id*. at 570; *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

The Fourth Circuit has directed district courts to construe *pro se* complaints liberally, though "[i]t does not require those courts to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Further, "[a]lthough a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense," including qualified immunity. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (internal quotation marks omitted)).

## **Analysis**

There are three elements a plaintiff must establish to state a cause of action under 42 U.S.C. § 1983: "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997) (internal reference omitted). Plaintiff has not established the first element to Count (1).

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure'" for Fourth Amendment purposes. *Whren v. United States*, 517 U.S. 806, 809 (1996). Such a stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. And "[t]raffic stops are justified at their inception when officers observe a violation of the applicable traffic laws." *United States v. Davis*, 460 Fed. Appx. 226, 230 (4th Cir. 2011) (citing *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008)). Further, "a police officer's decision to stop

and detain an individual must be evaluated objectively," rather than considering the officer's state of mind. *Branch*, 537 F.3d at 337; *see also Whren*, 517 U.S. at 814 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

Several provisions of the Virginia Code support that Defendant had at least an objectively reasonable suspicion of a traffic law violation when he stopped Plaintiff. Virginia Code § 46.2-711(F) states that "[n]o vehicles shall be operated on the highways in the Commonwealth without displaying the license plates required by this chapter." Virginia Code § 46.2-715 provides that "[l]icense plates assigned to a motor vehicle . . . *shall be attached to the front and the rear of the vehicle*." (emphasis added). And Virginia Code § 46.2-716(A) provides that "[e]very license plate shall be securely fastened to the motor vehicle, trailer, or semitrailer to which it is assigned: 1. So as to prevent the plate from swinging, 2. In a position to be clearly visible, and 3. In a condition to be clearly legible."

Plaintiff concedes his vehicle only had a "Michigan temporary tag" in the "upper back window"—not front or rear license plates. Amend. Compl. ¶¶ 3–5. Defendant, in observing the lack of front or rear license plate on Plaintiff's vehicle, could have had a reasonable suspicion of "a violation of the applicable traffic laws." *Davis*, 460 Fed. Appx. at 230 (citing *Branch*, 537 F.3d at 335). "[R]easonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). So if it is "objectively reasonable for an officer in [Defendant's] position to think that [Plaintiff violated Virginia law]," then there is "reasonable suspicion justifying the stop," even if the officer was mistaken. *Id.* at 67. Thus, Count I must be dismissed because there was no Constitutional violation.

Count (2) asserts that Defendant violated Plaintiff's rights by detaining Plaintiff "even after [Defendant] 'realized' he made a 'mistake'." Amend. Compl. at 4–5. "[T]he law has become

well established that during a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check, and issue a citation." *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004) (internal citation omitted); *see also Branch*, 537 F.3d at 335 (4th Cir. 2008) ("Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop."); *United States v. Mohammed*, 572 Fed. Appx. 203, 205 (4th Cir. 2014).

"With regard to duration, although the reasonable duration of a traffic stop 'cannot be stated with mathematical precision,' a stop may become 'unlawful if it is prolonged beyond the time reasonably required to complete [its] mission.'" *United States v. Guijon-Ortiz*, 660 F.3d 757, 764 (4th Cir. 2011) (quoting *Branch*, 537 F.3d at 336 and *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Courts thus must consider "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). The Fourth Circuit has approved of traffic stops that lasted longer than that which occurred here. *E.g.*, *United States v. Mincey*, 321 Fed. Appx. 233, 241–42 (4th Cir. 2008) (thirty-five minutes) ("Here, it is unnecessary to reach the reasonable suspicion analysis, as the scope and duration of the vehicle stop were justified by the time and actions necessary for [the officer] to verify the information contained in the driver's license and rental agreement provided to him by [the plaintiff], . . . .").

Without deciding if the continued stop was a violation of Plaintiff's right to be free from unreasonable detention after seizure, the Court determines that Plaintiff's claim is barred by qualified immunity. Qualified immunity protects government officials from civil liability for "civil damages insofar as their conduct does not violate clearly established . . . rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he [or she] is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Allen v. Cooper*, 895 F.3d 337, 356 (4th Cir. 2018). The question is whether it is clearly established that it is a constitutional violation for an officer to detain the driver for fourteen minutes and run a license check after the officer has determined the driver has not committed a traffic offense. No such precedent has been found or cited. Thus, the Defendant is entitled to qualified immunity.

## Conclusion

Plaintiff has failed to state a claim for Count I, and Defendant has qualified immunity as to both Counts. Thus, Defendant's motion to dismiss is **GRANTED.**

It is so ORDERED.

The Clerk of Court is directed to send a copy of this Memorandum Opinion and Order to all parties in the case. Additionally, the Clerk of Court is directed to strike this case from the Court's active docket.

Entered this 28th day of December, 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE